UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMITABHO CHATTOPADHYAY, | Case No. 3:22-cv-06103-LB |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | Re: ECF No. 15 |
| EVOLVE VACATION RENTAL NETWORK, INC., and DOES 1 through 10, inclusive, | |
| Defendants. | |

**INTRODUCTION**

In this putative class action, the plaintiff — who lives in the United States but isn't a U.S. citizen — tried to list her California property on defendant Evolve's online vacation-rental platform. Evolve denied her online application because its underwriting system "is capable of supporting [only] U.S. and Canadian citizens." The plaintiff claims that this is discrimination in violation of 42 U.S.C. § 1981 (based on alienage) and Cal. Civ. Code §§ 51 and 51.5 (based on citizenship and immigration status). Evolve, a Delaware corporation with a principal place of business in Colorado, moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim, generally because the plaintiff did not allege that she would have contracted with Evolve but for its alleged discrimination. Evolve also moved to strike the nationwide class allegations under Fed. R. Civ. P. 12(f) on the

1

2

ground that the court lacks personal jurisdiction over claims by class members outside of California.

3

4

5

6

7

8

The court dismisses the case (with leave to amend) under Rule 12(b)(2) for lack of personal jurisdiction because the claims here do not arise from Evolve's contacts with the forum. The plaintiff does not oppose the motion to strike the nationwide claims for lack of personal jurisdiction. The plaintiff also does not plausibly plead her discrimination claims because she does not plausibly plead that but for the alleged discrimination, she would have qualified to contract with Evolve. The dismissal is with leave to amend within twenty-eight days.

9

10

**STATEMENT**

11

**1.  The Alleged Discrimination and Class Claims**

12

13

14

15

16

17

18

19

20

21

The plaintiff is a citizen of Singapore and a legal resident of the United States.[1] She lives in California and owns a residential property located "in the State of California." She does not specify where (but, as discussed below, it apparently is in El Dorado County).[2] On March 16, 2022, when she was in California (at an unspecified location), she applied online to list her property on Evolve's vacation-rental platform.[3] Evolve responded by email: "**We would love to assist with your rental, but our underwriting system is only capable of supporting U.S. and Canadian citizens at this time.**"[4] The plaintiff replied, saying that she had permanent-resident status and asking whether she needed to be a U.S. citizen.[5] The next day, March 17, Evolve responded that "at this time, we are unable to proceed due to the limitations of our underwriting system," which "currently allows us to process US & Canadian citizens only."[6]

22

23

24

25

26

27

28

---

[1] Compl. – ECF No. 1 at 3 (¶ 4). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 6 (¶ 16).

[3] *Id.* at 6–7 (¶ 19).

[4] *Id.* at 7 (¶ 21).

[5] *Id.* at 7–8 (¶ 22).

[6] *Id.* at 9 (¶ 23).

1   On October 8, 2022, while in Napa County, California, the plaintiff applied again to list her

2   property on Evolve's site.[7] Evolve responded, **"We would love to assist with your rental, but our**

3   **underwriting system is only capable of supporting U.S. and Canadian citizens at this time."**[8]

4   The plaintiff still wants to list her property on Evolve.[9] The complaint defines (1) a nationwide

5   class of all non-U.S. and non-Canadian citizens who applied on Evolve's website to list their

6   properties and were denied on the basis of their citizenship status and (2) a California subclass of

7   all non-U.S. and non-Canadian citizens who were in California at the time they applied online and

8   were denied on the basis of their citizenship status.[10] The complaint has three claims of

9   discrimination for violations of (1) 42 U.S.C. § 1981 (plaintiff and nationwide class based on

10  citizenship and alienage), (2) California's Unruh Act, Cal. Civ. Code § 51 (plaintiff and California

11  subclass based on citizenship and immigration status), and (3) Cal. Civ. Code § 51.5 (plaintiff and

12  California subclass class based on citizenship and immigration status).[11]

14  **2.  Jurisdictional Facts**

15  **2.1  Allegations in the Complaint**

16  Evolve is a Delaware corporation with its headquarters in Denver, Colorado.[12] It "operat[es] a

17  website-based business throughout the State of California including in Napa County at

18  www.evolve.com and has been contracting with Californians and managing vacation rental

19  properties throughout the State of California."[13] It describes its services to property owners on its

20  website: "we'll handle the hard parts of managing your property (like marketing, filling your

21  calendar, and supporting your guests). We do it all for an industry-low management fee of just

United States District Court
Northern District of California

---

[7] *Id.* at 6 (¶ 16).

[8] *Id.* (¶ 18).

[9] *Id.* at 8 (¶ 24).

[10] *Id.* at 9 (¶¶ 28–29).

[11] *Id.* at 12–16 (¶¶ 39–71).

[12] *Id.* at 3 (¶ 5).

[13] *Id.*

10%."[14] Its website invites vacationers to explore top vacation spots in regions in North America, including "The West." If users select "The West," there are many California destinations: the complaint lists twenty-one throughout the state.[15] At evolve.com/vacation-rentals, it lists California destinations, including the California wine country.[16] Evolve sent emails to the plaintiff in California (including one when she was in Napa) rejecting her application to list her property.[17]

### 2.2  Evolve's Additional Jurisdictional Facts

Evolve directs the company's activities from its headquarters and principal place of business in Denver, Colorado, and did so during the class period from October 17, 2018, to the present.[18] During that period, it did not have any offices, employees, computer servers, or property (owned or rented) in California, and it did not hold any events or conferences in California for customers or for publicity.[19]

Evolve conducts direct mail and digital marketing campaigns to people with second homes in "top rental markets" nationwide: a "handful" are in California. It does not focus "more particularly or intensively" on California markets or homeowners than it does for other top markets in the country. Its direct-mail campaigns do not offer special incentives to California homeowners that are not offered to homeowners in top markets outside of California.[20]

Evolve provided the plaintiff's online applications: her property is in El Dorado County.[21]

### 2.3  The Plaintiff's Additional Jurisdictional Facts

In a November 18, 2022, YouTube video titled "titled "Executive Panel: Growing Pains — The Maturing of Rentals — The #Phocuswright Conference 2022," Evolve's CEO Brian Egan

---

[14] *Id.* at 5–6 (¶ 15).

[15] *Id.* at 4–5 (¶¶ 12–13).

[16] *Id.* at 5 (¶ 14).

[17] *Id.* at 6 (¶¶ 16, 18), 7 (¶ 21), 8 (¶ 23).

[18] Becker Decl. – ECF No. 16 at 2 (¶ 5). The parties do not dispute each other's respective submissions. As discussed below, the court can consider them in evaluating jurisdiction.

[19] *Id.* at 2 (¶¶ 6–9), 3 (¶ 12).

[20] *Id.* at 2–3 (¶¶ 10–11).

[21] *Id.* at 4–5 (¶¶ 20–21) & Appls., Exs. E–F to *id.* – ECF Nos. 16-5–16-6.

United States District Court
Northern District of California

described how Evolve is different than other vacation-property management companies: it enters into partnerships with homeowners and service providers, "one homeowner at a time."[22]

A homeowner and Evolve customer in Lake Arrowhead, California, was impressed by Evolve's hiring of photographers and how Evolve employees "keep his local housecleaner up to date on every new booking."[23]

Evolve's website — shown by screenshots — displays its California vacation rentals on December 22, 2022: 1,616 properties in California, a narrowed subcategory showing the application of filters (San Diego, pet-friendly, and onsite parking), guest reviews of San Diego properties, and FAQ about renting in San Diego and other property characteristics such as pools or wi-fi.[24]

Evolve explains on its website how it works with homeowners: it is the "front desk" for the homeowners' rental business, it supports "your guests at every stage of their travel, at any time of the day," and interacts with guests directly by managing guest inquiries and bookings, handling all pre-stay communications with homeowners, coordinating each stay with local contacts, providing damage protection and liability coverage, and screening all booking transactions to help protect homeowners against fraud.[25]

In a February 4, 2021, YouTube video titled "Secret Sauce of Property Management Company Evolve Vacation Rental — Interview of the CEO," CEO Brian Eagan described the business model: Evolve markets the homes and "create[s] that guest brand that they get to benefit from, you know, as opposed to being an individual owner, you now have a marketing machine behind you that has 14,000 homes on a platform that is drawing quite a bit of demand as well." Later he said, "[we] have an inspection process as well. We are sending photographers in, we shoot all of our photography, so that we know exactly what it is that's going to be represented under our brand.

---

[22] Adler Decl. – ECF No. 22-1 at 2 (¶ 1) (citing www.youtube.com/watch?v=qtfevv9dQSM).

[23] *Id.* (¶ 2) (citing case study at https://try.evolve.com/case-study-arrowhead-re) & Case Study, Ex. 1 to *id.* at 8–9).

[24] *Id.* at 2–3 (¶ 4) & Screenshots, Ex. 3 to *id.* at 25–27.

[25] *Id.* at 3 (¶ 4) & Screenshots, Ex. 4 to *id.* at 29–30.

United States District Court
Northern District of California

And in doing so we're also inspecting homes . . . to ensure that the home is safe, that it's clean, that it's ready to receive guests[,] and ultimately that it's as advertised."[26]

The plaintiff attaches screenshots confirming the representations in the February video: (1) screenshot about local photographers ("[w]e partner with professional photographers like you (and pay you directly) to provide . . . high-definition photographs for our property listings" and "we'll connect you with homeowners and you'll act as our brand representative during the shoot;" (2) screenshot about housecleaners (describing them as crucial to the guest experience and outlining their duties); (3) screenshot describing how Evolve partners with local guest-service providers who interact with homeowners; (4) Evolve's "full-service" management solutions for a ten-percent fee; (5) screenshot of feedback from a local management company praising Evolve's generating more consistent bookings and maintaining accountability and praising homeowners for picking Evolve because "they've done their research and know where the vacation rental industry is heading;" (6) screenshot showing incentives to local service providers of $250 for referrals and a $250 management-fee credit when the referrals join Evolve; (7) screenshot describing partnerships with vacation-rental companies Vrbo, HomeAway, and Airbnb; and (8) screenshot analyzing the income upshot to homeowners in the California hotspot Big Bear.[27]

### 2.4  Evolve's Supplemental Jurisdictional Facts

Evolve submitted case studies and market analyses for other markets, like those that the plaintiff provided for the California market.[28]

### 3.  Relevant Procedural History

The parties do not dispute that the court has subject-matter jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[29] The court held a hearing on May 25, 2023.

---

[26] *Id.* (¶ 6) (citing www.youtube.com/watch?v=JutNEL_E0M).

[27] *Id.* at 4–5 (¶¶ 7–14) & Screenshots, Exs. 5–11 to *id.* at 37–59.

[28] Jones Decl. – ECF No. 23-1 at 2 (¶¶ 2–3) & Website Pages, Exs. 1–2 to *id* – ECF No. 23-2.

[29] Consents – ECF Nos. 8, 12.

**STANDARD OF REVIEW**

**1.  Personal Jurisdiction — Rule 12(b)(2)**

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (cleaned up). "Uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (cleaned up). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the bare allegations of the complaint.") (cleaned up).

**2.  Failure to State a Claim — Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned

up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

The plaintiff has not made a prima facie showing of personal jurisdiction, and she did not plausibly plead her claims of discrimination.

### 1. Personal Jurisdiction

#### 1.1 Legal Standard

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the

district court applies the law of the state in which the district court sits." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1089 (9th Cir. 2023). California's long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The court's "inquiry centers on whether exercising jurisdiction comports with due process," which requires that defendants have "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 125–26 (2014) (cleaned up).

Personal jurisdiction is general or specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017).

General jurisdiction exists "only when a defendant is essentially at home in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (cleaned up). The paradigm forum for individual defendants is the individual's domicile and for corporate defendants, the states where they are incorporated or have their principal place of business. *Bristol-Myers Squibb*, 137 S. Ct. at 1780. A court with general jurisdiction can hear any claim against a defendant, even if the incidents underlying the claim took place in a different state. *Id.* at 1779–80; *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). The plaintiff does not argue general jurisdiction.

Specific jurisdiction exists when the suit arises out of or relates to the defendant's contacts with the forum. *Walden*, 571 U.S. at 284; *Bristol-Myers Squibb*, 137 S. Ct. at 1779–80. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and thus is subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024. The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which

1
2
3
4

> he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

5

6

7

8

*Picot*, 780 F.3d at 1211; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211–12. "If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up).

9

10

11

12

13

14

15

A plaintiff satisfies the first prong by "demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum or purposefully directed its activities at the forum," *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods*, 874 F.3d 1064, or engaged in "some combination thereof," *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam); *accord Impossible Foods, Inc. v. Impossible X LLC*, --- F.4th ---, 2023 WL 5921361, at *6 (9th Cir. 2023).

16

17

18

19

20

21

22

23

24

25

26

27

28

The court's application of the purposeful-direction or purposeful-availment test "turns on the nature of the underlying claims." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). When a defendant's conduct takes place primarily outside the forum state, the Ninth Circuit generally applies the purposeful-direction "effects" test and "look[s] to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *Impossible Foods*, 2023 WL 5921361, at *6; *Washington Shoe Co.*, 704 F.3d at 672–73 (the "effects" test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum") (cleaned up). It applies a purposeful-availment analysis when "the defendant has taken deliberate action within the forum state or has created continuing obligations to forum residents." *Impossible Foods*, 2023 WL 5921361, at *6 (cleaned up)." "Thus, purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Id.* (cleaned up); *see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th

1    Cir. 2004); *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d

2    1101, 1107 (9th Cir. 2020).

3         The discrimination claims here are tort claims. *McAlester v. United Air Lines, Inc.*, 851 F.2d

4    1249, 1255 (10th Cir. 1988) (in addressing the effect of the Railway Labor Act, which preempts

5    collective-bargaining contract claims, held that "an action under § 1981 sounds in tort rather than

6    contract"); *Crouch v. Ruby Corp.*, No. 22-CV-711-MMA (JLB), 2022 WL 16747282, at *7 (S.D.

7    Cal. Nov. 7, 2022) (applying purposeful-direction test to "statutory[] discrimination claims" under

8    the Unruh Act and Cal. Civ. Code § 51.5). The plaintiff argues only purposeful direction. Still, as

9    set forth above, prong one can involve "some combination" of purposeful availment and purposeful

10   direction. *Impossible Foods, Inc.*, 2023 WL 5921361, at *6; *Yahoo! Inc.*, 433 F.3d at 1206. The

11   cases "do not impose a rigid dividing line between purposeful availment and purposeful direction."

12   *Impossible Foods*, 2023 WL 5921361, at *6 (cleaned up) (collecting cases in a trademark

13   declaratory-judgement case, where the typical roles of plaintiff and defendant are reversed, and the

14   defendant's acts were largely taken within the state). In the end, "the purposeful direction and

15   availment tests simply frame [the] inquiry into the defendant's purposefulness vis-à-vis the forum

16   state, ensuring that defendants are not haled into a jurisdiction solely as a result of random,

17   fortuitous, or attenuated contacts." *Id.* (cleaned up).

18        The discrimination claims here result from an attempted business transaction with the

19   defendant, which has a business model that includes California properties. The purposeful-

20   availment and purposeful-direction tests both are relevant to whether Evolve's acts are random,

21   fortuitous, or attenuated.

22        First, as to purposeful availment, "[t]o have purposefully availed itself of the privilege of

23   doing business in the forum, a defendant must have performed some type of affirmative conduct

24   which allows or promotes the transaction of business within the forum state." *Boschetto v.

25   Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (cleaned up). "A showing that a defendant

26   purposefully availed himself of the privilege of doing business in a forum state typically consists

27   of evidence of the defendant's actions in the forum, such as executing or performing a contract

28   there." *Schwarzenegger*, 374 F.3d at 802; *cf. Picot*, 780 F.3d at 1212. But a contract alone does

United States District Court
Northern District of California

not automatically establish minimum contacts. *Picot*, 780 F.3d at 1212. "A contract is only an intermediate step that connects prior negotiations with future consequences, the real object of a business transaction." *Long v. Authentic Athletix LLC*, No. 16-cv-03129-JSC, 2016 WL 6024591, at *3 (N.D. Cal. Oct. 14, 2016). For example, the mere negotiation of a contract in a forum — when performance is not contemplated in the forum — likely is not purposeful availment. Thus, courts have declined to find that a non-California party to an insurance contract purposefully availed itself of the privilege of conducting business in California by negotiating the insurance contract with a counterparty located in California when the contract did not contemplate performance in California. *Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 18-cv-7680-LB, 2019 WL 2410732, at *6–7 (N.D. Cal. June 7, 2019) (analyzing cases). Performance in the forum, on the other hand, can be purposeful availment. *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 595 (N.D. Cal. 2022) (a defendant purposefully avails itself of the privilege of doing business in the forum by opening offices and hiring employees in the forum). So too can a defendant's knowledge that the forum state is a primary audience for its products. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486–87 (9th Cir. 1993) (Swedish doctors defamed a California corporation in a medical journal; purposeful availment can be established if California was a primary audience for the journal or the doctors knew that it would be circulated there).

Second, purposeful direction exists if the defendant (1) commits an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Washington Shoe Co.*, 704 F.3d at 673; *Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (articulating this "effects" test). "However, referring to the *Calder* test as an effects test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong — the effects prong — holding that something more is needed in addition to a mere foreseeable effect." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) (cleaned up).

Then, as to prong two of the specific-jurisdiction test, the issue is whether the plaintiff's claims arise out of or are related to the defendants' contacts with the forum. *Ford Motor Co.*, 141 S. Ct. at 1026; *Ayla*, 11 F.4th at 983. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State

United States District Court
Northern District of California

and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up). Ninth Circuit precedent before *Ford* required a showing of but-for causation for prong two. *Ayla*, 11 F.4th at 983 n.5 (collecting cases). But "[t]he Supreme Court announced in *Ford* that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts[] even absent causation." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023). Thus, a showing of but-for causation is permitted, but not required, to satisfy prong two. *Ayla*, 11 F.4th at 983 n.5 (collecting cases).

### 1.2  Application

No case addresses precisely these facts: the allegedly discriminatory denial of service to a would-be California customer of an online platform that manages the rental of at least some vacation property in California. But case law reveals some relevant considerations.

For example, a defendant's knowledge that a customer is located in California does not equate necessarily to express aiming. For instance, when a British manufacturer contracted to sell parts to a British subsidiary of a U.S. company for ultimate use by a Czech end user, the U.S. company's payment for the goods did not establish personal jurisdiction because the product testing and the alleged fraud took place in the UK, and there were no direct misrepresentations to California-based personnel. *Bright Lite Structures, LLC v. Balform, Ltd.*, No. 20-cv-00567-LB, 2020 WL 2218967, at *9 (N.D. Cal. May 7, 2020) (analyzing cases involving fraud entirely outside of the forum); *Picot*, 780 F.3d at 1215 (misrepresentations in other states that caused third party to stop making payments to a California plaintiff did not establish personal jurisdiction in California).

Similarly, if the activity is unrelated to the forum state, there is no personal jurisdiction. *See Rupert v. Bond*, 68 F. Supp. 3d 1142, 1166 (N.D. Cal. 2014) (no personal jurisdiction related to alleged mismanagement of an Oregon trust merely because communications were sent to California; "the alleged trust mismanagement took place in Oregon, and []any emails or letters sent from Oregon to California were with regard to Oregon estate planning decisions, undertaken on behalf of an Oregon resident"); *see also Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 727–31 (E.D. Pa. 1999) (internet postings did not attack the plaintiff in his capacity as a Pennsylvania psychiatrist; two emails to him also were not purposeful availment).

1    On the other hand, there is purposeful direction when a defendant targets the forum. *Herbal*

2  *Brands*, 72 F.4th at 1092. This case involves an interactive website that sells a service to

3  customers. Operation of an interactive website alone is not express aiming: to hold otherwise

4  would subject a seller to specific jurisdiction in any forum where the website is visible, regardless

5  of whether the seller consummates a sale. That result is too broad to comport with due process. *Id.*

6  But operating a website "in conjunction with something more — conduct directly targeting the

7  forum — is sufficient to satisfy the express aiming prong." *Id.* (cleaned up). The analysis turns on

8  whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an

9  audience in the forum. *Id.*

10    For example, in *Mavrix*, the defendant aimed its content of celebrity gossip at the California

11  forum because it had a specific focus on the California-centric entertainment industry. *Id.* (citing

12  *Mavrix*, 647 F.3d at 1222, 1229–31); *Mavrix*, 647 F.3d at 1230 (website had "a specific focus on the

13  California-centered celebrity and entertainment industries;" "[b]ased on the website's subject

14  matter, [the website] anticipated, desired, and achieved a substantial California viewer base"). By

15  contrast, adult content that involves a global market can lack a forum-specific focus. *See Herbal*

16  *Brands*, 72 F.4th at 1092 (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir.

17  2020)); *AMA*, 970 F.3d at 1210–11 (users uploaded adult content, and the popularity and volume of

18  that content was not express aiming because the relationship must involve "contacts that the

19  defendant *himself* creates with the forum State;" geo-located advertising was not express aiming

20  either) (quoting *Walden*, 571 U.S. at 284).

21    For interactive website stores like Amazon, a visitor's inputting data directly does not alone

22  establish express aiming. *Herbal Brands*, 72 F.4th at 1092. But actual sales can: selling physical

23  products through an interactive website that causes the product to be delivered to customers in the

24  forum state is express aiming at the forum if (1) the sales occur as part of the defendant's regular

25  course of business, as opposed to being "random, fortuitous or isolated," and (2) if the defendant

26  exercises some level of control over the ultimate distribution of its products beyond simply

27  placing them into the stream of commerce. *Id.* And the second prong — the defendant's contacts

28  with the forum — is satisfied in the sales cases because the claims "clearly arise out of and relate

1    to Defendants' conduct of selling those same products to [the forum] residents." *Id.* at 1096 (citing

2    *Ford*, 141 S. Ct. at 1025, and *Ayla*, 11 F.4th at 983) (promotion, sale, and distribution of products

3    in the forum state related to the plaintiff's trademark claims).

4         Courts also have found personal jurisdiction for solicitations directed at the forum state. In

5    *Hood v. Am. Auto Care, LLC*, for example, a Colorado resident with a Vermont phone number

6    sued a seller of vehicle warranty contracts over the latter's telemarketing calls. 21 F.4th 1216,

7    1219–20 (10th Cir. 2021). The plaintiff alleged that the defendant "use[d] telemarketing to sell

8    vehicle service contracts . . . nationwide, including in Colorado." *Id.* at 1220. The defendant

9    contended that its call to a Vermont phone number was not a contact with the Colorado forum. *Id.*

10   The Tenth Circuit, applying *Ford*, held that the injury and contacts are related if "(1) the defendant

11   has purposefully directed activity to market a product or service at residents of the forum State and

12   (2) the plaintiff's claim arises from essentially the same type of activity." *Id.* at 1224. The

13   plaintiff's injury related to the defendant's Colorado contacts because "[e]ven if [the defendant]'s

14   call to [the plaintiff] was not a direct result of its telemarketing efforts directed at Colorado, [the

15   plaintiff] was still injured there by activity essentially identical to activity that [the defendant]

16   directs at Colorado residents." *Id.*; *accord Herbal Brands*, 72 F.4th at 1092 (applying a similar test

17   of (1) sales as part of a defendant's regular business and (2) the defendant's exercise of control

18   over product distribution).

19        This case is a step removed from a sale or solicitation: it is a potential customer's unilateral

20   online application for a possible business relationship in the forum. The plaintiff alleges

21   solicitations directed toward owners of second homes, but she does not allege that she saw or

22   received a solicitation.[30] If she did, that might affect the analysis. But the plaintiff's inquiry to a

23   website, without more information about Evolve's own acts, do not involve "contacts that the

24   defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284. Similarly, unlike the

25   sales cases, the claims here do not "clearly arise out of and relate to Defendants' conduct of selling

26   those same products to [the forum] residents." *Herbal Brands*, 72 F.4th at 1096.

27

28   ───────────────
     [30] *See supra* Statement.

*United States District Court*
*Northern District of California*

1    But there are fact allegations here that distinguish the plaintiff's claims from the business and

2    interactive-website cases: she alleges discrimination by a provider that has business in the forum.

3    That makes her case somewhat like an application for employment. And employment cases often

4    involve claims of discrimination or retaliation.

5    When an out-of-state employer retaliates against a California employee that it hired to work in

6    the state to advance the employer's interests, its hiring of the employee is availing itself of the

7    privilege of conducting business in California. *Franey v. Am. Battery Sols., Inc.*, No. 22-cv-03457-

8    LB, 2022 WL 4280638, at *5–6 (N.D. Cal. Sept. 15, 2022). And under a purposeful-direction

9    analysis, allowing an employee to work from California to advance company interests, and then

10   retaliating or discriminating against her, establishes the express-aiming element. *Id.* at *6–7. For

11   prong two — whether the claims arise out of or relate to the defendant's forum-related activities —

12   operating a business in the forum and applying a challenged policy to workers in the forum not only

13   are express acts aimed at the forum but also can be the necessary contacts with the forum. If the

14   forum contacts involve more than the plaintiff's unilateral actions and instead involve a business

15   relationship that advances the defendant's interests, then there can be jurisdiction when the

16   defendant knows that the plaintiff will suffer harm in the forum based on the defendant's conduct

17   directed to the forum (as opposed to the mere knowledge that the plaintiff is in the forum). *Id.* at

18   *8–9 (analyzing claims of retaliation by a California plaintiff against an out-of-state employer).

19   Evolve does business in California (and elsewhere) and solicits and manages the rentals: it (1)

20   contracts with California property owners to manage their properties, including by handling

21   marketing, booking guests, supporting the guests, and arranging housekeeping[31] (listing, as of

22   December 22, 2022, 1,616 properties in California),[32] (2) conducts direct-mail and digital-

23   marketing campaigns directed at people with second homes in California (and other states),[33] and

24   (3) operates a website that enables guests to find vacation rentals in California (through website

25

26   _____

27   [31] Compl. – ECF No. 1 at 5–6 (¶ 15); Adler Decl. – ECF No. 22-1 at 2 (¶ 2), 3 (¶¶ 4, 6), 4–5 (¶¶ 7–14).

     [32] Adler Decl. – ECF No. 22-1 at 2–3 (¶ 4) & Screenshots, Ex. 3 to *id.* at 25–27.

28   [33] Becker Decl. – ECF No. 16 at 2–3 (¶¶ 10–11).

United States District Court
Northern District of California

1   pages that promote vacation destinations in California and other states[34]) (including El Dorado

2   County, where the plaintiff's property is located[35]). Evolve also denied the plaintiff's application,

3   allegedly for discriminatory reasons, knowing that she was in California.

4          That application-response context can make a difference. In *Am. Auto Ass'n, Inc. v. Darba*

5   *Enters.*, the district court held that it had personal jurisdiction over a website operator that sold

6   California users' contact information. The users had to enter their contact information, including

7   their zip code, to get insurance quotes. It thus was "reasonable to infer that the third parties to whom

8   [the] defendant sold this contact information targeted potential customers based on their geographic

9   location." No. 09-00510 SI, 2009 WL 1066506, at * 4–5 (N.D. Cal. Apr. 21, 2009).

10         In this case, the connection to the forum is more attenuated: it involves an aggrieved California

11  plaintiff, but there is not an exploitation of the California market. *See DFSB Kollective Co. v.*

12  *Bourne*, 897 F. Supp. 2d 871, 881–82 (N.D. Cal. 2012) (distinguishing *Am. Auto. Ass'n*, 2009 WL

13  1066506, at *5–6, in a case involving copyright infringement of music and holding that personal

14  jurisdiction is not established merely by users' registering for a commercial website that has

15  infringing content). This contrasts with *Mavrix*, where the website — with its focus on the

16  California-centered celebrity market — made money through third-party advertisers that targeted

17  the California market. *Id.* at 882 (analyzing *Mavrix*, 647 F.3d at 1222, 1229–30).

18         Conceptually, if a defendant does business in California, and it denies a business opportunity

19  to a prospective California-based business partner (or employee) for impermissible discriminatory

20  reasons (say, by a refusal to hire for impermissible reasons), then its conduct could be related to its

21  business activities, involve its purposeful availment of the forum, be aimed at the forum, and arise

22  out of or relate to the defendant's forum-related activities. That availment of the privilege of

23  conducting activities in the forum, thereby invoking the benefits and protections of it, also can

24  result in a business's being subject to its antidiscrimination laws. But again, the facts here involve

25  the plaintiff's unilateral application and the defendant's blanket application of its policies related

26

27  _____
    [34] Compl. – ECF No. 1 at 4–5 (¶¶ 12–14).

28  [35] Becker Decl. – ECF No. 16 at 4–5 (¶¶ 20–21) & Appls., Exs. E–F to *id.* – ECF Nos. 16-5–16-6.

1    to the limitations of its underwriting policy. They do not involve Evolve's affirmative conduct that

2    allows or promotes its business. *Boschetto*, 539 F.3d at 1011. And the claims do not arise out of

3    relate to Evolve's contacts with the forum. *Ford*, 141 S. Ct. at 1026.

4        Evolve cites *Crouch v. Ruby Corp.* to support its argument that decisions made outside the

5    forum state do not convey personal jurisdiction. That putative class action turned on whether there

6    was a sufficient targeting of the forum. The plaintiff challenged a dating website's charging male

7    subscribers more than female subscribers, in violation of California's Unruh Act. 639 F. Supp. 3d

8    1065, 1072 (S.D. Cal. 2022). In examining whether the website expressly aimed its tortious conduct

9    at the California forum, the court considered the sliding-scale approach: on one end are the passive

10   websites, which are accessible to anyone and merely display information, and on the other are

11   interactive websites, which function for a commercial purpose and where users can exchange

12   information. *Id.* at 1079–80 (collecting and analyzing cases). But in the end, there was no targeting

13   of the California forum for online dating: there were no tailored marketing or ads, no California

14   themes, and no identified business income from California. *Id.* at 1080–82 (dismissing with leave to

15   amend). By contrast, there are at least some allegations about Evolve's business here. But the

16   allegations do not show affirmative conduct related to the claims. *Ford*, 141 S. Ct. at 1021.

17       On these allegations, the court does not order jurisdictional discovery. *Crouch*, 639 F. Supp.

18   3d at 1082 (requiring fuller showing of jurisdictional facts before jurisdictional discovery). While

19   a district court is vested with broad discretion to permit or deny jurisdictional discovery, courts

20   generally require a plaintiff to make out a "colorable basis" for jurisdiction to warrant discovery.

21   *See, e.g.*, *Teras Cargo Transp. (Am.) LLC v. Cal Dive Int'l (Austl.) Pty Ltd.*, No. 15-cv-03566-

22   JSC, 2015 WL 6089276, at *8 (N.D. Cal. Oct. 16, 2015) (citing cases). Courts may properly deny

23   jurisdictional discovery where "there is insufficient evidence to give rise to more than a 'hunch'"

24   that discovery will make out a case for exercising personal jurisdiction over a defendant. *See id.*

25   (denying jurisdictional discovery and observing that "speculation cannot rise above the 'mere

26   hunch' bar that the Ninth Circuit requires cleared to obtain jurisdictional discovery") (quoting

27   *Corcera Sols., LLC v. Razor, Inc.*, No. 5:13-cv-05113-PSG, 2014 WL 587869, at *3 (N.D. Cal.

28   Feb. 14, 2014)). That approach applies here: the plaintiff's allegations involve her unilateral

United States District Court
Northern District of California

1    application, and her claims are based on Evolve's policy to restrict its listings to citizens of the

2    United States and Canada. That policy is set by, and enforced from, Evolve's headquarters in

3    Colorado.[36] That makes the case different from parties with an established business relationship

4    and closer to the cases where the dispute has no connection to the state other than the fact that the

5    plaintiff resides there. *Cf. Kulko v. Super. Ct.*, 436 U.S. 84, 94–95 (1978) (divorced husband sued

6    for child support not subject to personal jurisdiction because the connection to the forum is only

7    that his ex-wife and daughter live there). And unlike the employment cases, there is no

8    relationship that creates obligations such that Evolve availed itself of the privilege of doing

9    business here. *Mewawalla*, 601 F. Supp. 3d at 595. The claims do not arise out of or are related to

10   Evolve's forum-related activity. *Walden*, 571 U.S. at 286; *Ford*, 141 S. Ct. at 1026.

11       The court dismisses the claims for lack of personal jurisdiction with leave to amend.

12       The plaintiff did not oppose Evolve's motion to strike the allegations regarding the national

13   class for lack of personal jurisdiction.[37] The court strikes the nationwide class allegations for lack

14   of personal jurisdiction. This defect cannot be cured on amendment.

15

16   **2.   Failure to State a Claim**

17       The main issue here is whether the plaintiff pleaded sufficiently that she would have contracted

18   with Evolve but for the alleged discrimination.[38] That is, the plaintiff must plead that but for the

19   impermissible discrimination, she would not have suffered the loss of a legally protected right.

20   *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("a

21   plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the

22   loss of a legally protected right"). Evolve asserts that she did not plead that she satisfies the

23   requirements to provide a short-term rental, including the necessary government approvals to

24

25   [36] Becker Decl. – ECF No. 16 at 2 (¶ 5).

26   [37] Opp'n – ECF No. 22 at 23–26 (focusing on class members who were in California at the time they applied); Reply – ECF No. 23 at 18–19 (Evolve "does not seek to strike the California class

27   allegations" and "concedes that at least [at] this juncture, the Court should strike only the nationwide class allegations").

28   [38] Reply – ECF No. 23 at 16.

operate her home as a short-term rental.[39] It collects cases that require plaintiffs to allege facts to show that they met the qualifications for the contract.[40] The plaintiff responds that Evolve disqualified her for a discriminatory reason and that she intended to contract with Evolve.[41] She does not address the cases that Evolve cites. On amendment, the plaintiff must allege at least that she otherwise met the requirements for a short-term property rental.

## CONCLUSION

The court grants the motion to dismiss with leave to amend within twenty-eight days. Any amended complaint must attach a blackline compare of the amended complaint against the current complaint.

This disposes of ECF No. 15.

**IT IS SO ORDERED.**

Dated: September 21, 2023

_____
LAUREL BEELER
United States Magistrate Judge

---

[39] Mot. – ECF No. 15 at 23–28.

[40] *Id.* (collecting and analyzing cases).

[41] Opp'n – ECF No. 22 at 21–22.

United States District Court
Northern District of California